# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **THE MAIDS INTERNATIONAL, INC .,** a Nebraska corporation; | **8:17CV208** |
| **Plaintiff,** | |
| **vs.** | **MEMORANDUM AND ORDER** |
| **MAIDS ON CALL, LLC,** a Connecticut limited liability company; **MAIDS ON CALL II, LLC,** a Massachusetts limited liability company; **TIMOTHY SCUSSEL,** an individual; **MARYANNE SCUSSEL,** an individual; **SARA ROCK,** an individual; **STACEY SCUSSEL,** an individual; and **S.A.G. MANAGEMENT, INC.,** | |
| **Defendants.** | |

This matter is before the Court on the Motion for Preliminary Injunction, ECF No. 21, filed by Plaintiff, The Maids International, Inc. (TMI). Plaintiffs have not sought a temporary restraining order in conjunction with the Motion for Preliminary Injunction. For the reasons stated below, the Court concludes that the Motion will be granted.

## BACKGROUND

TMI is the franchisor of the "The Maids" franchise system that provides professional household maintenance and cleaning services to residential properties in the United States and Canada (the Franchise System). TMI alleges that it has developed a business system for its services using techniques, special equipment and processes, standards and specifications, products, and other methods (the Business System). TMI's Business System is associated with TMI's "The Maids" trademarks,

trade names, service marks, and related marks (referred to collectively as the Marks). Kirwan Aff., ¶ 4, ECF No. 23-15 at Page ID 1342-43. TMI licenses franchisees to use its Business System and Marks pursuant to the terms of written Franchise Agreements. *Id.*

From July 30, 2002, until on or about March 1, 2008, Defendants Timothy Scussel, and Maryanne Scussel (collectively referred to as the Scussel Defendants) entered into four separate Franchise Agreements in which they were granted the right to own and operate four different "The Maids" franchised businesses in the state of Connecticut and the Commonwealth of Massachusetts. *Id.* ¶ 9, ECF No. 23-15 at ECF. 1343-44; *see also* ECF Nos. 22-2 through 22-6.[1] The Scussel Defendants operated their former The Maids franchised businesses out of two locations: (1) 92 Weston Street, Suite 10A, Hartford, Connecticut 06120; and (2) 1680 Riverdale Street, Unit B, West Springfield, Massachusetts 01089. ECF No. 23-15 at Page ID 1344. Pursuant to the terms of the Franchise Agreements, the Scussel Defendants provided maintenance and cleaning services at customers' homes throughout central Connecticut and south-central Massachusetts. Defendants Sara Rock and Stacey Garon, daughters of the Scussel Defendants, were employees and/or managers of the franchised businesses and were involved in the operation of those businesses. ECF No. 23-15 at Page ID 1346.

During the period that the Scussel Defendants operated their The Maids franchises, they received access to information that TMI regarded as proprietary and confidential. This information included instructions regarding TMI's Business System,

---

[1] The documents submitted at ECF Nos. 22-2 through 22-6 are copies of each of the Franchise Agreements. They will be collectively referred to in this Memorandum and Order as the "Franchise Agreements." For purposes of this Motion, the applicable terms are essentially identical.

copies of TMI's confidential operation manuals, proprietary software programs, information about TMI's products and services, customer information, buying patterns and needs of customers, audio and video training tapes, vendor information, pricing information, supplemental training bulletins and notices, marketing and advertising materials, business forms and other materials (collectively referred to as the Business Information). The Franchise Agreements prohibited the Scussel Defendants and their employees from "us[ing] the Manuals or any information contained therein in connection with the operation of any other business or for any purpose other than in conjunction with the operation of" their "The Maids" franchised businesses. *See*, *e.g.*, ECF No. 22-2, Page ID 749-50. The Scussel Defendants also received training from TMI regarding the Business System and other marketing and cleaning techniques. Defendants Rock and Garon[2] had access to the Business Information as employees and managers within the Scussel Defendants' franchises.

In Fall 2014, TMI investigated the Scussel Defendants' sales and reporting practices and concluded that the Scussel Defendants were providing services to customers outside of their territories and in the territories of neighboring "The Maids" franchisees in violation of Article 2.1 of the Franchise Agreements. Kirwan Aff., ¶ 18, ECF No. 23-15 at Page ID 1346. TMI discovered that the Scussel Defendants had failed to accurately report all sales to TMI and failed to pay all fees owed on those sales, as required by the Franchise Agreements. TMI notified the Scussel Defendants and

---

[2] The original Complaint names Defendant Stacey Scussel. However, Stacey Scussel alleges in her affidavit that she goes by the name Stacey Garon and was mistakenly sued under the name Stacey Scussel. Garon Aff. ¶ 2, ECF No. 31-7, Page ID 1459. The Amended Complaint corrects her name and the Court will refer to her as Stacey Garon in this Memorandum and Order and direct that the Clerk of Court correct the spelling of her name in the caption.

provided them with an opportunity to cure the breaches. After the Scussel Defendants failed to cure the breaches, TMI terminated the Franchise Agreements. ECF No. 23-15 at Page ID 1346-47.

By mutual agreement between the parties, TMI subsequently "stayed" the termination of the Franchise Agreements to allow the Scussel Defendants time to sell their The Maids franchised businesses. However, the Scussel Defendants failed to sell their businesses and, instead, abandoned those businesses in April 2017. Accordingly, TMI lifted its stay of the termination and terminated the Franchise Agreements by letter dated April 12, 2017 (the Termination Letter). ECF No. 23-3, Page ID 1288. In the Termination Letter, TMI described the Scussel Defendants' post-termination obligations, including the non-compete and non-solicitation provisions in Article 19.3 of the Franchise Agreements. *Id.*, Page ID 1291.

TMI alleges in its Complaint that the Scussel Defendants have failed to comply with the non-compete and non-solicitation provisions set forth in Article 19.3 of the Franchise Agreements and are now operating a directly-competitive residential maintenance and cleaning business. Defendants assert that in or around September 2016, Defendants Stacey Garon and Sara Rock established a new residential cleaning business, SAG Management, Inc. d/b/a Two Sisters Cleaning Service (Two Sisters). Garon Decl. ¶¶ 5-6, ECF No. 31-7, Page ID 1480. Two Sisters had a new website, new uniforms, and new telephone numbers. *Id.* In December 2016, Defendant Timothy Scussel sent a letter to customers of his The Maids franchise announcing his retirement (the Retirement Letter). *See* ECF No. 31-6, Page ID 1456. Scussel stated that "SARA, STACEY and MILLIE are ready to take over. (They really have been running the

4

business for many years)." *Id.* The Retirement Letter further explained that although Timothy Scussel expected "most everything will remain the same," pricing would increase. Scussel explained that this was due to minimum wage increases in Massachusetts and Connecticut. Thus, according to Scussel, pricing "was going to change regardless of the start up of our new company or not." *Id.*, Page ID 1457.

Two Sisters carried over several items from the Scussel Defendants' The Maids franchise. Two Sisters operates at the same Hartford, Connecticut, and West Springfield, Massachusetts, locations where the Scussel Defendants operated their The Maids franchised businesses and performs the same services. At the time TMI filed its Motion for Preliminary Injunction, Two Sisters continued to display a The Maids sign outside the West Springfield, Massachusetts location. The Two Sisters' Facebook page indicated that Two Sisters used the same email address in their Two Sisters business that the Scussel Defendants used in the operation of their former The Maids franchised businesses. *See* ECF No. 23-7. The Two Sisters website states that it is "family owned and operated" and has been "professionally cleaning homes and businesses since 2002." Filing No. 23-9. Information from the Whois website registration service indicates that Tim Scussel is the "registrant," "admin," and "tech" for the Two Sisters website. Two Sisters continued to use the same yellow vehicles associated with The Maids franchises. ECF No. 23-6. Motor vehicle records indicate that two of the vehicles used by Two Sisters are still registered to Defendant Maids on Call, LLC. *See* ECF Nos. 23-12, 13.

TMI alleges that Defendants conspired to operate a competing residential maintenance and cleaning service business under the Two Sisters name to circumvent

and avoid the non-compete, post-termination, and non-solicitation provisions of the Franchise Agreements. TMI alleges that the Scussel Defendants breached the Franchise Agreements and Personal Guaranties by failing to pay lost future fees and failing to comply with post-termination obligations. Amended Compl., ECF No. 37, Page ID 1638-39. TMI further alleges that all Defendants violated the non-competition and non-solicitation provisions of the Franchise Agreements. *Id.*, Page ID 1640. TMI also alleges trademark infringement, unfair competition, and civil conspiracy. *Id.*, Page ID 1641-43, 46. Finally, TMI alleges that the Garon and Rock tortiously interfered with TMI's business relationships. *Id.*, Page ID 1644-45.

## DISCUSSION

### Application of Injunction to All Defendants

As an initial matter, the Court addresses whether each of the Defendants can be subject to an injunction in this case. Defendants imply that under Rule 65(d)(2), an injunction against all Defendants may only issue if the Scussel Defendants benefitted from or are significantly involved in the operation of Two Sisters. *See* Df. Br. at 27, ECF No. 32, Page ID 1497. Defendants provide no support for this contention and the plain language of Rule 65(d)(2) permits broader application. Under Rule 65(d)(2), a preliminary injunction may bind "(A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)." The Eighth Circuit has further described those acting in active participation, stating that "[a] decree of injunction not only binds the parties defendant but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control." *United States v.*

*Yielding*, 657 F.3d 722, 728 (8th Cir. 2011) (citing *Thompson v. Freeman,* 648 F.2d 1144, 1147 (8th Cir.1981)).

Defendants argue that although Two Sisters, Rock, and Garon are named parties, they cannot be enjoined because Rock and Garon were not signatories to the Franchise Agreements that form the basis for TMI's claims. Therefore, according to Defendants, Two Sisters, Rock, and Garon cannot be not bound by the terms of the Franchise Agreements. Defendants also argue that Maids on Call and the Scussel Defendants cannot be enjoined for the acts of a separate business entity. The Court previously held that franchisees may be enjoined under Rule 65 based on the actions of those acting in concert with them. *See Merry Maids, L.P. v. WWJD Enters., Inc.*, No. 8:06CV36, 2006 WL 1720487, at *12 (D. Neb. June 20, 2006). Conversely, those acting in concert with franchisees may be bound for actions that violate a franchise agreement, regardless of whether they signed the agreement. *Id.* In this case, all Defendants may be bound by a preliminary injunction if they are acting in concert or are in privity with each other. Accordingly, for a preliminary injunction to issue against all Defendants, the Court looks to whether (a) the Scussel Defendants are in privity or acting in concert with Two Sisters, Garon, and Rock, and (b) Garon, Rock, and Two Sisters are in privity or acting in concert with the Scussel Defendants.

**1. Scussel Defendants' Connection to Two Sisters**

The Scussel Defendants argue that a preliminary injunction against them and Maids on Call is improper because Two Sisters was created and operates as a completely separate entity. However, several shared characteristics demonstrate that the Scussel Defendants and Maids on Call are in privity with Two Sisters for purposes

of a preliminary injunction. Two Sisters performs the same services and operates at the exact locations of the former The Maids franchises in Hartford and West Springfield. *See* ECF No. 23-15. As of the filing of this motion, the sign at the West Springfield location still employed the The Maids logo. ECF No. 23-16. The Two Sisters Facebook page uses the same email address that the Scussel Defendants used in operating their The Maids franchise. *See* ECF No. 23-7. At least two vehicles used by Two Sisters are registered to Defendant Maids on Call. Filing No. 23-12.

Although the Scussel Defendants allege that Rock and Garon set up Two Sisters separately, the evidence shows references to the Scussel Defendants' involvement in the creation of Two Sisters. For example, Defendant Timothy Scussel is identified as the "Registrant", "Admin.", and "Tech." for the Two Sisters website. ECF No. 23-10. Further, Defendant Timothy Scussel's personal email address is referenced as the address associated with the Two Sisters website. *Id.* Although Defendants argue that Two Sisters' corporate documents show no reference to The Maids or the Scussel Defendants, Two Sisters' Massachusetts registration indicates that it was faxed from Maryann Scussel from a fax number associated with the Scussel Defendants. ECF Nos. 33-1, 33-2. Timothy Scussel even admitted that he filled in for Two Sisters drivers on at least two occasions. ECF No. 34-8, Page ID 1468.

Perhaps most telling of the Scussel Defendants' interconnected relationship with Two Sisters is the Retirement Letter. *See* ECF No. 31-6. In the letter, which Defendants submitted as evidence of Scussel Defendants' lack of privity, Timothy Scussel stated that Rock and Garon were not going to be a part of The Maids franchise and were going off on their own. However, the letter emphasized that Rock and Garon were "ready to

take over. (They really have been running the business for many years)." ECF No. 31-6, Page ID 1456. The Retirement Letter described how Two Sisters intended to be a continuation of the The Maids business:

> With the company that they are starting (TWO SISTER [sic] CLEANING SERVICE) most everything will be the same as you know it today. *We* will have the same employees that you may know cleaning your home, using the same products to clean your home, the same cleaning schedule, *we have the same insurance, (workers comp, liability & bonding) that we currently have.*
>
> Now, you have a choice to make. 1. Choose TWO SISTERS CLEANING SERVICE as your cleaning company, and everything remains the same as you know it today. 2. Choose another cleaning service, or 3. Which may or may not happen is The Maids may start another franchise in this area. *Hopefully you have been happy with our service and will remain with us.*
>
> I said that most everything will remain the same. There is one item that is going to change. Now this was going to change regardless of the start up of our new company or not. That item that is changing is *our pricing*. As many of you know the minimum wage is going up again beginning Jan. 1, 2017. In Massachusetts the minimum wage is going from the current $10.00 per hour to $11.00, and in Connecticut from the current $9.60 to $10.10. When the minimum wage goes up our workers comp, liability insurance and payroll tax all go up because they are all based upon our payroll. Our price increase is an average 2.7% per customer. *For those of you that have been with us for many years know that we have not raised our price VEREY* [sic] *much over the years.*

ECF No. 31-6, Page ID 1456-57 (emphasis added). The emphasized portions of the Retirement Letter show Timothy Scussel referred to Two Sisters as a continuation of the Scussel Defendants' The Maids franchise. Scussel indicated that things would remain the same and referred to the Two Sisters business using terms such as "us", "we", and "our." Based on Scussel's own language and the evidence in the record, TMI has shown that the Scussel Defendants are in privity with Two Sisters for purposes of this Motion.

## 2. Two Sisters' Connection with Scussel Defendants

Defendants argue that Two Sisters cannot be in privity with the Scussel Defendants because Rock and Garon were not signatories to the Franchise Agreements and set up Two Sisters as a wholly separate entity. Several courts have addressed this argument and determined that non-signatories may not avoid an injunction simply by being non-signatories to a franchise agreement.[3] The Court addressed a similar argument in *Merry Maids, L.P. v. WWJD Enters., Inc.* In *Merry Maids*, a franchisor sought a preliminary injunction against the spouse of a former franchisee who sought to avoid the conditions of a franchise agreement. 2006 WL 1720487, at *12. The spouse claimed that the cleaning business she operated was unrelated to her husband's franchise, and therefore could not be subject to an injunction to enforce the franchisor's franchise agreements with her husband. *Id.* The Court granted the preliminary injunction, concluding that the evidence showed the former franchisee and his spouse acted in concert when forming the spouse's competing business. *Id.* The Court reasoned that the franchisee gave the spouse money meant to start the competing business and transferred the physical assets of the franchise to the spouse in undocumented transactions and for no consideration. *Id.* Evidence also

---

[3] *See, e.g., H&R Block Tax Servs., LLC v. Strauss*, 2015 WL 470644, at *6 (N.D.N.Y. Feb. 4, 2015) (enjoining non-signatories where evidence "indicate[d] that these tax preparers at Defendant's location, if not her employees, are at minimum acting 'in active concert or participation with' Defendant, and are thus subject to the covenants discussed herein."); *Victory Lane Quick Oil Change Inc. v. Darwich*, 2013 WL 393020, at *2 (E.D. Mich. Jan. 31, 2013) ("Defendants made this same argument [that they have no interest in the competing business] in response to Plaintiff's motion for preliminary injunction, and the court rejected it because [the ex-franchisee] remained the tenant at the [competing business] location …"); *NovaSeptum AB v. Amesil, Inc.*, 2010 WL 5620906, at *3–4 (D.N.J. Dec. 29, 2010) (enjoining non-party using "substantial continuity of identity" test, "adopted as a general expression of the degree of closeness that Rule 65(d) requires for a non-party successor to be subject to the injunction," where non-party party took over party's assets and employees); *Tanfran, Inc. v. Aron Alan LLC*, 2007 WL 1796235 (W.D. Mich. June 20, 2007) (granting injunction against non-signatory where business continued uninterrupted and continued using same assets).

showed that the franchisee gave confidential and proprietary information to his spouse and that the spouse was able to use the information to contact and solicit business from Merry Maids customers. *Id.* Finally, the competing business operated out of the same location as the franchise and continued, uninterrupted, during its transition from the franchise to the competing business "which now supplies services formerly supplied to its customers by [the franchise]." *Id.* Thus, "the business property ha[d] remained within the [franchisee's] family, presumably to the benefit of all the defendants." *Id.*

In this case, similar evidence demonstrates that Rock and Garon are in privity with the Scussel Defendants and Maids on Call. As noted above, Two Sisters operates out of the same offices using largely the same physical assets of the former The Maids franchise. At the time the Motion was filed, some of the assets were still in the name of Timothy Scussel.[4] The Retirement Letter promised that Two Sisters would use the same products, schedules, insurance, and employees to perform cleaning services. *See* ECF No. 31-6, Page ID 1456. Although Defendants deny that Two Sisters kept or is using a customer list to contact The Maids customers, their own evidence shows that the Scussel Defendants contacted The Maids customers on Two Sisters' behalf. Timothy Scussel admits that he sent the Retirement Letter "to the former Maids franchise's customers." ECF No. 32, Page ID 1495. The Retirement Letter urged customers of The Maids franchise to "continue" doing business with Two Sisters. *See id.* ("Hopefully you

---

[4] Defendants argue that they changed ownership of assets and website registration from the Scussel Defendants to Garon and Rock or Two Sisters when they became aware of the allegations of this lawsuit. These actions, taken in reaction to the allegations and evidence in the Motion for Preliminary Injunction, do not alone cure the potential breach of the Franchise Agreements. Furthermore, as stated below, Two Sisters continues to occupy the same location, use the same assets, and service the same customers of the former The Maids franchise. Accordingly, the steps taken to separate the Scussels from Two Sisters are not, by themselves, sufficient to avoid a preliminary injunction.

have been happy with our service and will remain with us."). The Two Sisters website, registered to Timothy Scussel, emphasized continuity, proudly stating that Two Sisters is "family owned and operated" and has been "professionally cleaning homes and businesses since 2002," the year the Scussel Defendants' Franchise Agreements began with TMI. *See* Filing No. 23-9.

Most telling, Garon confirmed that "many of the customers" of the Scussel Defendants' former The Maids franchise are now patronizing the competing Two Sisters business, instead of a "new Maids franchise" in the Scussel Defendants' former territory. Garon Decl., ECF No. 31-1, Page ID 1461. Thus, Defendants' evidence shows that not only did Scussel directly solicit The Maids customers, but succeeded in doing so. Just as in *Merry Maids*, this evidence shows that the Scussel Defendants intended to ensure that Two Sisters could continue, uninterrupted, during its transition from the The Maids franchise. Two Sisters, Garon, and Rock benefitted from the Scussel Defendants' actions and have acted in concert with them. Thus, for purposes of Rule 65, they are in privity with the Scussel Defendants and may be bound by a preliminary injunction.

### Factors for Issuing Preliminary Injunction

Having determined that Defendants acted in concert, the Court turns to whether a preliminary injunction is appropriate. When determining whether to issue a preliminary injunction, courts in the Eighth Circuit apply the factors set forth in *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc). Those factors are: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Id.* "No single factor

is determinative." *WWP, Inc. v. Wounded Warriors, Inc.*, 566 F. Supp. 2d 970, 974 (D. Neb. 2008). "A preliminary injunction is an extraordinary remedy and the burden of establishing the propriety of an injunction is on the movant." *Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 705 (8th Cir. 2011) (citing *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003)).

## 1. Likelihood of Success on the Merits

"In deciding whether to grant a preliminary injunction, likelihood of success on the merits is most significant." *S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 776 (8th Cir. 2012) (quoting *Minn. Ass'n of Nurse Anesthetists v. Unity Hosp.*, 59 F.3d 80, 83 (8th Cir.1995)). TMI seeks an injunction based on three of its claims: trademark infringement; breach of post-termination obligations; and violation of the non-compete and non-solicitation requirements of the Franchise Agreements. The Court considers each of these claims in turn.

### a. Trademark Infringement

To establish a claim for trademark infringement under the Lanham Act, §§ 1114 or 1125, TMI must show "that it has ownership or rights in the trademark and that the defendant has used the mark in connection with goods or services in a manner likely to cause consumer confusion as to the source or sponsorship of the goods or services." *Cmty. of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church*, 634 F.3d 1005, 1009 (8th Cir. 2011). Thus, to show that it is likely to succeed on its trademark infringement claims, TMI must show that it owns the "The Maids" trademark and service mark (the "TMI Marks" or "Marks"), and that Defendants' use of the mark is likely to cause customer confusion.

13

### i.  Ownership of the Marks

Generally, the registration of a trademark is "conclusive evidence of the registrant's . . . ownership of the trademark . . ." *Dakota Indus., Inc. v. Ever Best Ltd.*, 28 F.3d 910, 912 (8th Cir. 1994); *see also* 15 U.S.C. §§ 1115(b), 1065. Defendants argue that TMI has failed to demonstrate that it is the registered owner of the Marks. However, despite Defendants' blanket claims, TMI has submitted a copy of its trademark registration demonstrating that it has owned the Marks at all times relevant to this lawsuit. *See* Trademark Registration No. 2928853, ECF No. 33-5.  The Trademark Registration is conclusive evidence of TMI's ownership of the Marks.

### ii.  Likelihood of Confusion

The Lanham Act expressly prohibits the unauthorized use of another's registered trademark without the registrant's consent in a manner that is "likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a); *see also Buffalo Wild Wings Int'l, Inc. v. Grand Canyon Equity Partners, LLC*, 829 F. Supp. 2d 836, 842 (D. Minn. 2011). Unauthorized users of a registered trademark may be enjoined. § 1116(a). "[T]he essential question in any case of alleged trademark infringement is whether purchasers are likely to be misled or confused as to the source of the different products or services." *Battle Sports Sci., LLC v. Shock Doctor, Inc.*, 225 F. Supp. 3d 824, 838 (D. Neb. 2016) (quoting *WSM, Inc. v. Hilton*, 724 F.2d 1320, 1329 (8th Cir. 1984)). Where a former franchisee continues to use the trademark of its former franchisor, "the quantum of proof necessary to establish a likelihood of confusion is less." *Downtowner/Passport Int'l Hotel Corp. v. Norlew, Inc.*, 841 F.2d 214, 219 (8th Cir. 1988). This is so because "[c]ommon sense compels the conclusion that a strong risk of consumer confusion

14

arises when a terminated franchisee continues to use the former franchisor's trademarks" *Id.* (quoting *Burger King Corp. v. Mason,* 710 F.2d 1480, 1492 (11th Cir. 1983)); *See also Klipsch, Inc. v. WWR Tech., Inc.*, 127 F.3d 729, 738 (8th Cir. 1997) (a former licensee's "continued, non-permissive use" of a licensor's trademarks "amounts to infringement").

In this case, there is compelling evidence that Defendants continued to use the Marks after TMI terminated the Franchise Agreements. At the time the Motion was filed, the Two Sisters Facebook page displayed an email address that employed portions of the Marks and was the same email address the Scussel Defendants used during the term of the Franchise Agreements. See ECF No. 37-10. Further, the Two Sisters location in West Springfield, Massachusetts continues to use the "The Maids" sign and distinctive mark outside the business. *See* Filing No. 37-11. Defendants acknowledge this evidence but claim that no preliminary injunction should issue because, when the Motion was filed, they changed the email address and took down the sign. Nevertheless, TMI has shown that Defendants continued to employ the Marks after the termination of the Franchise Agreements. The evidence demonstrates that such continued use is likely to cause confusion. Accordingly, Defendants will be preliminarily enjoined from using the Marks.

### b. Breach of Non-Compete and Non-Solicitation Provisions

Sufficient evidence demonstrates that Defendants are violating the non-compete and non-solicitation provisions (collectively referred to as the "Restrictive Covenants") of the Franchise Agreements. Under both Connecticut and Massachusetts law, restrictive

covenants are enforceable so long as the restraints are reasonable.[5] *See, e.g., Elida, Inc. v. Harmor Realty Corp.*, 413 A.2d 1226, 1229 (1979); *Boulanger v. Dunkin' Donuts Inc.*, 815 N.E.2d 572 (2004). Such restraints are reasonable if they afford a fair protection of the interest of the party in whose favor the covenant runs, is reasonably limited in time and space, and is consonant with the public interests. *Scott v. Gen. Iron & Welding Co.*, 368 A.2d 111, 114–15 (1976); *Boulanger*, 815 N.E.2d at 576–77. Based upon the evidence before the Court at this stage, TMI is likely to prove that the Restrictive Covenants are fair protections of reasonable interests and are reasonably limited.

Courts in both Connecticut and Massachusetts have held that a business has an interest in protecting its goodwill, customer lists, know-how, trade secrets, trademarks, and the integrity of its franchise system. *See Carvel Corp. v. Leopold DePaola*, No. CV505443, 2001 WL 528203, at *11–12 (Conn. Super. Ct. Apr. 24, 2001); *New Haven Tobacco Co. v. Perrelli*, 528 A.2d 865, 867 (Conn. 1987); *Certified Pest Control Co. v. Kuiper*, 294 N.E.2d 548, 551 (Mass. App. 1973). The restrictive covenants in the Franchise Agreements seek to protect the goodwill associated with the Marks, the Business Information, and the integrity of the TMI franchise system. There is no dispute that TMI has a reasonable interest in protecting these interests through the restrictive covenants.

---

[5] The Franchise Agreements state that, "[e]xcept to the extent governed by the United States Trademark Act of 1946 (Lanham Act, 15 U.S.C. § 1051 et seq.), [the Franchise Agreements] and the relationship between TMI and the [Defendants] will be governed by the laws of the state in which the Exclusive Market Area is located." *See, e.g.*, ECF No. 22-2 at Page ID 782. Defendants do not assert that another state's law governs, but cite to several jurisdictions throughout the brief. At this stage, the Court is satisfied that the laws of Connecticut govern the terms of the 2002, 2003, and 2004 Franchise Agreements, and the laws of Massachusetts govern the terms of the 2008 Franchise Agreement.

The Restrictive Covenants are also reasonable in scope and consonant with the public interest. They limit the Scussel Defendants from operating a competing cleaning business within 20 miles of their former franchises for a period of 15 months. Courts in both Connecticut and Massachusetts have enforced restrictive covenants that limit competition for longer periods of time over a larger geographical area.[6] The public interest supports enforcement of the Restrictive Covenants, because the Scussel Defendants agreed to the covenants in the Franchise Agreements in exchange for receiving the benefits of the franchise. *See Get In Shape Franchise, Inc. v. TFL Fishers, LLC*, 167 F. Supp. 3d 173, 200 (D. Mass. 2016) ("Here, the non-compete clause does not offend the public interest because [the former employee] knowingly agreed to reasonable restrictions on her post-franchise employment options in exchange for the benefits of participating in a franchise system."). Because the Restrictive Covenants are reasonably limited in time and scope, and do not offend the public interest, they are enforceable.

The evidence at this stage demonstrates that TMI is likely to show that Defendants are violating the Restrictive Covenants. As noted above, Two Sisters operates out of the same offices using largely the same physical assets of the former The Maids franchise. The Retirement Letter directly solicited customers of the former The Maids franchise on behalf of Two Sisters. *See* ECF No. 31-6, Page ID 1456. Many

---

[6] *See, e.g., Grease Monkey Intern., Inc.*, 808 F. Supp. 111, 119-20 (D. Conn. 1992) (applying Connecticut law to enforce 50 mile restrictive covenant); *Money Mailer Franchise Corp. v. Wheeler*, No. CV084010066S, 2008 WL 4415942, at *5 (Conn. Super. Ct. Sept. 16, 2008) (enforcing 50 mile restrictive covenant to apply to radius surrounding both the franchisees' former territories and current franchisees' territories); *In re Ward*, 194 B.R. 703 (Bankr. D. Mass. 1996) (recognizing validity of two year, fifty (50) mile restrictive covenant against former The Maids® franchisee); *All Stainless, Inc. v. Colby*, 308 N.E.2d 481, 468 (Mass. 1974) (enforcing two-year restrictive covenant); *Blackwell v. Helides*, 331 N.E.2d 54, 56 (Mass. 1975) (enforcing three (3) year restrictive covenant);

of these customers are now customers of the Two Sisters business, instead of a "new Maids franchise" in the Scussel Defendants' former territory. Garon Decl., ECF No. 31-1, Page ID 1461. The evidence shows that Two Sisters is competing in the geographic area for the same customers as the former The Maids franchise, using the same methods, products, and employees. Accordingly, TMI has demonstrated likelihood of success on its claim for breach of the Restrictive Covenants.

### c. Breach of Post-Termination Obligations

TMI argues that Defendants have failed to comply with their post-termination obligations under Article 18 of the Franchise Agreements.[7] *See* Franchise Agreement, ECF No. 22-2, Page ID 771-72. Article 18 requires, in relevant part, that, upon termination or expiration of the Franchise Agreements, Defendants must: comply with the Restrictive Covenants; cease using TMI's Marks; return all manuals, proprietary information, confidential material, marketing and advertising materials, the required software, videotapes, and any other written materials containing any of TMI's trademarks or otherwise relating to their former The Maids franchised businesses; alter the automobiles used in their business to eliminate the distinctive appearance of a The Maids business; cease using TMI's proprietary or confidential operational, administrative or advertising techniques, systems or know-how, or trade secrets TMI disclosed to them; refrain from engaging in any contacts with customers or former customers of their former The Maids franchised businesses; and assign all telephone

---

[7] Article 18 is also referred to in this Memorandum and Order as the "Post-Termination Obligations."

numbers, fax numbers, telephone directory listings, domain names and email addresses associated with their former The Maids franchised businesses to TMI. *Id*.

The evidence at this stage demonstrates that Defendants are using techniques, the proprietary Business System, customer lists, and contact information in violation of the Post-Termination Obligations. Defendants admit that they are using the same, distinctive yellow-colored vehicles associated with the The Maids franchise. Defendants also have used or are using TMI's Marks and goodwill associated with the The Maids franchise to solicit customers away from TMI. The evidence demonstrates that Defendants have failed to return manuals, proprietary information, confidential material, marketing and advertising materials, the required software, videotapes, and other written materials belonging to TMI. Defendants do not directly refute their failure to comply with the Post-Termination Obligations, but argue they are not required to fulfill their Obligations because Two Sisters is a separate entity. This argument fails to address why Defendants are excused from the requirements of Article 18. Accordingly, the Court will require Defendants to comply with the Post-Termination Obligations.

For the reasons stated above, the evidence at this stage of the proceedings shows that TMI is likely to succeed on its claims for trademark infringement, breach of the Restrictive Covenants, and breach of Post-Termination Obligations. Accordingly, this factor favors issuance of a preliminary injunction.

**2. Threat of Irreparable Harm**

TMI has demonstrated a threat of irreparable harm because Defendants are directly benefitting from the franchise relationship while successfully operating a competing business. "It is well established that '[i]rreparable harm occurs when a party

has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages.'" *Grasso Enters., LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1040 (8th Cir. 2016) (quoting *Gen. Motors Corp. v. Harry Brown's, LLC,* 563 F.3d 312, 319 (8th Cir.2009)). TMI established irreparable harm on its trademark infringement claims by showing likelihood of success on the merits. *See Gen. Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 625 (8th Cir. 1987) (stating that irreparable harm could be presumed where movant shows probable success in proving a likelihood of consumer confusion).

TMI has also demonstrated the threat of irreparable harm under its claims for breach of the Restrictive Covenants and Post-Termination Obligations. In the context of a franchise agreement, several Courts have held that "harm to goodwill, like harm to reputation, is the type of harm not readily measurable or fully compensable in damages—and for that reason, more likely to be found 'irreparable.'" *K–Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 915 (1st Cir.1989). For example, in *Get In Shape Franchise, Inc. v. TFL Fishers, LLC*, 167 F. Supp. 3d 173, 202 (D. Mass. 2016), the court, applying Massachusetts law, concluded that irreparable injury was shown because "[t]he existence of a competing small-group, women's fitness studio at the location of the former [franchisee's] studio will likely harm [the franchisor's] goodwill and impair its ability to establish another studio." Similarly, in *Jiffy Lube Int'l, Inc. v. Weiss Bros.*, 834 F. Supp. 683, 692–93 (D.N.J.1993), the court found irreparable harm, explaining that "the good will of the franchisor would be harmed by the existence of a competing service center at the very site of the former Jiffy Lube center." *Id. See also Bad Ass Coffee Co. of Hawaii v. JH Nterprises, L.L.C.*, 636 F. Supp. 2d 1237, 1249 (D.

Utah 2009) ("[T]he majority of courts that have considered the question have concluded that franchising companies suffer irreparable harm when their former franchisees are allowed to ignore reasonable covenants not to compete."); *Quizno's Corp. v. Kampendahl*, No. 01 C 6433, 2002 WL 1012997, at *7 (N.D. Ill. May 20, 2002) (finding irreparable harm where violation of non-compete clause would result in lost sales, goodwill, and market presence the franchisor once had in the area, and would threaten the franchise system as a whole).

The factors establishing irreparable harm in other cases demonstrate threat of irreparable harm to TMI in this case. Two Sisters operates out of the same locations as the former The Maids franchises. Until the filing of this Motion, at least one of the locations continued to use the The Maids logo on signage outside the location. Timothy Scussel assured then-customers of his The Maids franchise that if they chose to continue with Two Sisters, most everything would remain the same. Thus, customers of the former The Maids franchise were not merely confused by the transition, but were expressly told, by Scussel, that they would benefit from a continuity of operations if they remained with Two Sisters. The result of these actions is not speculative. Defendants have admitted that several The Maids customers are now customers of Two Sisters. As a result of these actions, TMI has lost actual customers in the areas protected by the Franchise Agreements, and could irreparably lose market presence in the area. Accordingly, TMI has demonstrated the threat of irreparable harm.[8]

---

[8] Defendants argue that TMI's delay in enforcing its rights under the Franchise Agreement undermines its claim of irreparable harm. "In order to demonstrate irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013). The Eighth Circuit has held that a significant delay in seeking injunctive relief may undermine a party's claim of irreparable harm. *See id.* at 894. Defendants argue that TMI's delay of nearly six months before seeking injunctive

### 3. Balance of the Harms

The primary question when issuing a preliminary injunction is whether the "balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase,* 640 F.2d at 113. To determine the harms that must be weighed, the Eighth Circuit has looked at the threat to each of the parties' rights that would result from granting or denying the injunction. *Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1473 (8th Cir. 1994). A Court also must consider the potential economic harm to each of the parties and to interested third parties. *Id.*

Defendants argue that the balance of harms weighs in favor of Defendants because an injunction to enforce the Franchise Agreements would effectively put Two Sisters out of business. However, this factor cannot weigh in Defendants' favor where their hardship is a result of their misappropriation and breach of contract. Where a party brings harm upon itself by "virtue of [its own] recalcitrant behavior, the [party opposing the injunction] can hardly claim to be harmed, since it brought any and all difficulties occasioned by the issuance of an injunction upon itself." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 596 (3d Cir. 2002); *see also Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 806 (3d

---

relief shows a lack of threat of irreparable harm. The Court is mindful of the delay, and the fact that TMI failed to seek a temporary restraining order. However, these facts alone do not extinguish the threat of irreparable harm. Even if TMI became aware of Two Sisters in December of 2016, there is no indication that it was aware of the Defendants' relationship with Two Sisters, nor is there evidence that TMI was aware of Defendants' intent that Two Sisters continue as the same business until several months later. Further, the delay in this case was much shorter than the delays in cases where irreparable harm was not shown. *See id.* (seventeen months); *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.,* 182 F.3d 598, 603 (8th Cir. 1999) (nine years); *see also Tough Traveler, Ltd. v. Outbound Prods.,* 60 F.3d 964 (2d Cir. 1995) (concluding that nine months' delay justified denial of a preliminary injunction because the delay was unexplainable in light of a plaintiff's knowledge of the conduct of the defendant).

Cir. 1998) ("[A] party's self-inflicted harm by choosing to stop its own performance under the contract and thus effectively terminating the agreement is outweighed by the immeasurable damage done to the franchisor of the mark.").

Although Defendants may be burdened by enforcement of the post-termination and non-compete restrictions contained in the Franchise Agreements, they accepted the restrictions in exchange for the benefits of the Franchise Agreements. Defendants have since benefitted from their franchise relationship with TMI in their operation of Two Sisters. "The often painful harm which follows a defendant who willfully breaches a contractual undertaking is not a basis for denying a plaintiff the relief to which it is legally entitled." *Jiffy Lube*, 834 F. Supp. at 693. Although enforcement of the restrictive covenants and post-termination obligations will harm Defendants, such harm is the result of their breach of those obligations. Accordingly, the balance of harms weighs in favor of issuing a preliminary injunction.

**4. Public Interest**

The Court concludes that the public interest favors issuance of a preliminary injunction. The Court recognizes that the value of free competition should be weighed against TMI's interest in its Marks, Business Information, and rights under the Franchise Agreements. *Cf. Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.,* 815 F.2d 500, 505 (8th Cir.1987). "Public interest can be defined a number of ways, but in a trademark case, it is most often a synonym for the right of the public not to be deceived or confused." *Pappan*, 143 F.3d at 807 (quotations omitted). Additionally, the enforcement of valid restrictive agreements serves the public interest. *N.I.S. Corp. v. Swindle,* 724 F.2d 707, 710 (8th Cir.1984) ("[I]f these noncompete agreements are valid, the public interest calls for their

enforcement."). Courts have held that where the moving party has demonstrated that misrepresentations are being made in the marketplace, the public interest favors injunctive relief. *See e.g. Minnesota Mining & Mfg. Co. v. Rauh Rubber, Inc.,* 943 F.Supp. 1117, 1134 (D.Minn.1996), *aff'd sub nom. Minnesota Min. & Mfg. Co. v. Rauh Rubber, Inc.,* 130 F.3d 1305 (8th Cir.1997).

TMI has demonstrated the potential for confusion in the marketplace based on Defendants' use of the Marks and their representations regarding the continuation of The Maids business. For the reasons stated above, the Court concludes that a preliminary injunction favors the public interest.

## CONCLUSION

TMI has demonstrated that the *Dataphase* factors have been satisfied in this case. The Court also concludes that all the Defendants are acting in active concert and a preliminary injunction is properly enforceable against all Defendants. Accordingly, the Motion for Preliminary Injunction will be granted.

IT IS ORDERED: that the Motion for Preliminary Injunction, ECF No. 21, filed by Plaintiff, The Maids International, Inc. ("TMI"), is granted as follows:

1.  Defendants and all persons or entities acting in concert with them are restrained and enjoined from infringing upon TMI's trademarks, trade names, service marks, and related marks;

2.  Defendants and all persons or entities acting in concert with them are restrained and enjoined from operating a competing business in violation of the non-compete, non-solicitation, and post-termination provisions, as stated in Articles 18 and 19 of the applicable Franchise Agreements; and

24

3.    Defendants and all persons or entities acting in concert with them must comply with the obligations imposed upon termination or expiration, as stated in Article 18 of the Franchise Agreements.

Dated this 25th day of September, 2017.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge